UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-454 (PLF) |
| v. | : | |
| | : | |
| ANTHONY PUMA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SUPPLEMENTAL BRIEF**

After the briefing on defendant Anthony Puma's motion to dismiss (Doc. 20) was completed, five judges of this Court issued rulings denying substantially similar motions seeking, *inter alia*, dismissal of counts charging obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). *See United States v. Montgomery*, No. 21-CR-46, Doc. 87, 2021 WL 6134591 (Dec. 28, 2021) (Moss, J.); *United States v. Nordean*, No. 21-CR-175, Doc. 263, 2021 WL 6134595 (Dec. 28, 2021) (Kelly, J.); *United States v. Mostofsky*, No. 21-CR-138, 2021 WL 6049891 (Dec. 21, 2021) (Boasberg, J.)[1]; *United States v. Caldwell*, --- F. Supp. 3d ---, No. 21-CR-28, 2021 WL 6062718, (Dec. 20, 2021) (Mehta, J.); *United States v. Sandlin*, --- F. Supp. 3d ---, 2021 WL 5865006 (D.D.C. Dec. 10, 2021) (Friedrich, J.). In a supplemental brief, the defendant contends that the count charging him under Section 1512(c)(2) should be dismissed notwithstanding those decisions. Doc. 28. That contention is flawed, and the defendant's motion should be denied.

A. **The certification of the Electoral College vote is an "official proceeding."**

An official proceeding as defined in 18 U.S.C. § 1515(a)(1) includes a "proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). While "not every action taken within the walls of

---

[1] The defendant omits any discussion of the *Mostofksy* ruling.

1

Congress" amounts to an official proceeding under that definition, "a joint session of Congress convened to verify and count the electoral vote for President and Vice President of the Untied States does." *Montgomery*, 2021 WL 6134591, at *4. Indeed, a "straightforward reading" of the "official proceeding" definition in Section 1515 "easily reaches the Certification of the Electoral College vote." *Caldwell*, 2021 WL 6062718 at * 4.

The Certification of the Electoral College vote ("Certification") is an "official proceeding" because it is "akin to a formal hearing." *Sandlin*, 2021 WL 5865006, at *3. The formality built in the "official proceeding" definition in Section 1515(a)(1) indicates that a proceeding should both "comprise part of the business of the enumerated body" and that the body in question "has convened in some formal respect for the purpose of conducting that business. *Montgomery*, 2021 WL 6134591, at *5. As applied to the "official proceeding" definition in Section 1515(a)(1)(B), the proceeding "must involve a formal assembly or meeting of Congress for the purpose of conducting official business." *Id.*; *accord id.* at *9 ("the term 'official proceeding' refers to '[t]he business conducted by ... [an] official body' that has formally convened for the purpose of conducting that business") (quoting *Proceeding*, Black's Law Dictionary (11th ed. 2019)). As described in the government's response to the defendant's motion to dismiss, the Certification indubitably involves a "formal" congressional assembly that conducts official business. *See* Doc. 23, at 11; *see Montgomery*, 2021 WL 6134591, at *9 (describing Certification proceeding); *Sandlin*, 2021 WL 5865006, at *4 (noting the Certification has all "the trappings of a formal hearing before an official body"); *Caldwell*, 2021 WL 6062718 at *4 (Congress carrying out the "business" of an "official body" meets the "official proceeding" definition).

In his supplemental brief, the defendant argues (Doc. 28, at 1-5) that the Certification does not qualify as an "official proceeding" because it is a mere "ceremonial meeting." That argument is factually and legally flawed.

Start with the mistaken factual argument. Under the Constitution and federal statutory law, the Certification comprises a step in the critical process of transferring power from one presidential administration to another, itself a critical bulwark in American democracy. The Twelfth Amendment requires presidential electors to meet in their respective states and certify "distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each." U.S. Const. amend. XII. It further requires that the Vice President "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." *Id.* The Electoral Count Act, in turn, requires Congress to meet on January 6 to count the electoral votes, resolve any objections, certify their validity, and announce the result. 3 U.S.C. § 15; *see* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1659 (2002) (Under the Electoral Count Act, "the President-elect is not elected by 'We the People' on election day, or even by the electors on the day they cast their votes, but by the joint convention of the Senate and House of Representatives on the day the electoral votes are formally counted"). A congressional proceeding that facilitates the Constitutional transition from one presidential administration to another is no mere "ceremonial" function.

The defendant's legal arguments fare no better. First, the defendant claims (Doc. 28, at 2-3) that that the Certification cannot be an official proceeding because it is instead a "meeting." The defendant fails to explain how describing a joint session or assembly of Congress as a "meeting" somehow places it outside Section 1515(a)(1)'s definition. In any event, the Constitutional requirement that Congress "convene" to certify the Electoral Vote results requires

3

"some formal convocation," *Nordean*, 2021 6134595 WL at *5, sufficient to render it a "proceeding before the Congress" regardless of whether the defendant opts to describe it as a "meeting." *See Montgomery*, 2021 WL 6134591, at *5 (an official proceeding "must involve a formal assembly or *meeting* of Congress for the purpose of conducting official business") (emphasis added). Similarly unavailing is the defendant's related contention (Doc. 28, at 3) that the Certification is not an official proceeding because the Senate and House of Representative "do not 'proceed' together." That contention rests on a faulty factual premise. The Houses meet together, 3 U.S.C. § 15, and although they may withdraw to separate Houses to consider objections (as occurred during the Certification in 2021), the "'joint meeting" must conclude with the declaration of a "result" in the presidential election, 3 U.S.C. § 16.

The defendant principally argues (Doc. 28, at 3-5) that the Certification is not an "official proceeding" because it is "entirely ministerial." *Id.* at 3. To be sure, the Certification proceeding following many presidential elections has been a routine affair that formalizes the certificates transmitted from Electors to Congress. But "it is inaccurate to characterize the Certification that occurred on January 6 as a 'purely ministerial, legislative vote-counting event.'" *Caldwell*, 2021 WL 6062718 at *7 (citation omitted). As noted above, the Certification is undertaken pursuant to the Constitution and federal statutory law. The Electoral Count Act imbues Congress with the power to "reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been [properly] certified." 3 U.S.C. § 15; *see* 3 U.S.C. § 6 (describing credentials of Electors). The Act further provides which votes Congress should count if "more than one return or paper purporting to be a return from a State shall have been received," and when votes given by "successors or substitutes" may be counted. *Id.*; *see* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L.

Rev. 541, 651 (2004) (The Electoral Count Act "provides a framework for Congress's consideration of the states' electoral votes, specifies the proper grounds for members of Congress who wish to object to counting any or all votes from a state, and provides decisional rules for cases where the Senate and House of Representatives disagree about whether to count a vote"). Those procedures do not describe a mere "ceremonial" proceeding, as the events of January 6, 2021—where crowds entered the Capitol as "each House was engaged in a proceeding 'to make an official decision about' disputed Electoral votes, *Caldwell*, 2021 WL 6062718 at *7 (citation omitted)—illustrate.[2]

### B. The defendant's as-applied vagueness claim lacks merit.

The defendant argues (Doc. 28, at 5-8) that his as-applied vagueness claim remains viable under the reasoning in *Montgomery*, *Nordean*, *Caldwell*, and *Sandlin*. Specifically, the defendant contends that his case "presents a closer question" (*id.* at 5) than those cases for various factual reasons—for example, because the defendant "did not engage in advance planning [or] assault anyone," "took no action to follow through with his statements,"[3] and entered the Capitol only "long after members of Congress were evacuated." *Id.* at 6-7. Those factual assertions play no role in resolving the defendant's pretrial as-applied vagueness claim. *See United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.) (internal quotation omitted) ("Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when trial of the facts surrounding

---

[2] The defendant's discussion (Doc. 28, at 4-5) of the "history of 'objections'" is inapposite. Objections before 1887 offer no insight into how to interpret the Electoral Count Act, which was passed that year. And debate in the House of Representative over the objection to a "faithless" Elector's vote in 1969 lasted two hours—the maximum permitted under the Act—followed by close votes in the House and the Senate. Kesavan, *supra*, at 1692-94. That is hardly the mark of a "ceremonial" or "ministerial" proceeding.

[3] On January 5, 2021, the defendant posted statements on social media asking, "[w]hat time do we storm the House Representatives? Hopefully we are storming the House of Representatives at 1 pm?" Doc. 23, at 9-10.

the commission of the alleged offense would be of no assistance in determining the validity of the defense.").

Section 1512(c)(2) "passes constitutional muster" because it "provides a discernible standard when legally construed." *Montgomery*, 2021 WL 6134591, at *20. A conviction under Section 1512(c)(2) requires proof that "the natural and probable effect of the defendant's actions were to obstruct the official proceeding; that he knew that his actions were likely to obstruct that proceeding; and that he acted with the wrongful or improper purpose of delaying or stopping the official proceeding." *Id.* at *22. Whether the evidence proves those elements in a given case is a question not of vagueness but of evidentiary sufficiency, a question that is premature at this juncture. *Id.*; *accord United States v. Williams*, 553 U.S. 285, 306 (2008) ("Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").

Judge Friedrich's decision in *United States v. Reffitt*, No. 21-cr-32 (DLF), Doc. 81 (Dec. 29, 2021), is instructive. As here, the indictment in *Reffitt* included allegations sufficient to alert the defendant of the "essential facts constituting the [Section 1512(c)(2)] offense charged," *id.* at 6-7 (citation omitted), but was not a speaking indictment as used in *Sandlin*, *Caldwell*, and *Nordean*.[4] Because the indictment in *Reffitt*—like the indictment here—tracked Section 1512(c)(2)'s statutory language and specified the time and place of the offense, it adequately put Reffitt on notice of the charge against him. *Id.* at 7 (citations omitted). Judge Friedrich thus denied Reffitt's "as-applied vagueness challenge as premature," permitting him to renew that challenge under Fed. R. Crim. P. 29 once "the facts have been established by evidence introduced at trial."

---

[4] The Section 1512(c)(2) charge in *Montgomery* also resembles the Section 1512(c)(2) charge in the defendant's case.

6

*Id.* (citing *United States v. Raniere*, 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019); *see Mostofsky*, 2021 WL 6049891, at *11 (denying as-applied vagueness claim where the facts were "sufficient to state an offense"). The same disposition is appropriate here.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.

    Respectfully submitted,

    MATTHEW D. GRAVES
    United States Attorney
    D.C. Bar No. 481502

By:

    */s/ James I. Pearce*
    James I. Pearce
    Capitol Breach Appellate Coordinator
    United States Attorney's Office
    NC Bar No. 44691
    555 Fourth Street, N.W.
    Washington, DC 20530
    James.Pearce@usdoj.gov
    (202) 532-4991

    *Amy E. Larson*
    Amy E. Larson
    Assistant United States Attorney
    N.Y. Bar No. 4108221
    555 4th Street, N.W.
    Washington, D.C. 20530
    202-252-7863
    amy.larson2@usdoj.gov