UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.           ) | Criminal No. 21-0454 (PLF) |
| ) | |
| ANTHONY PUMA,     ) | |
| ) | |
| Defendant.      ) | |
| ) | |

OPINION

The Press Coalition filed an Application for Access to Video Exhibits ("App.")

[Dkt. No. 57], seeking access to the videos provided by the government in advance of sentencing

in United States v. Puma, Criminal No. 21-0454.  See App.[1]  The Court granted this motion on

March 19, 2023, and issues this opinion to explain the basis for its decision.  See Order [Dkt.

No. 64].[2]

---

[1]      The Press Coalition is composed of the following media organizations:  Cable
News Network, Inc., ABC News, The Associated Press, BuzzFeed News, CBS News, The Wall
Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., The Los
Angeles Times, National Public Radio, Inc., NBC News, The New York Times Company, Pro
Publica, Inc., Tegna, Inc., and The Washington Post.  See App. at 1.

[2]      The Court has reviewed the following documents:  Government's Sentencing
Memorandum ("Gov't Sent'g Mem.") [Dkt. No. 55]; Government's Notice of Filing of Exhibits
Pursuant to Local Criminal Rule 49 ("Notice") [Dkt. No. 56]; Video Application for Access to
Video Exhibits ("App.") [Dkt. No. 57]; Defense Opposition to Application for Access to Video
Exhibits ("Def. Opp.") [Dkt. No. 59]; Reply Memorandum in Further Support of the Press
Coalition's Application for Access to Video Exhibits ("Reply") [Dkt. No. 60]; and Standing
Order 21-28, In re Media Access to Video Exhibits in Pretrial Hearings During the COVID-19
Pandemic (May 14, 2021) ("Standing Order 21-28").

## I. BACKGROUND

The charges against Mr. Puma relate to the events at the U.S. Capitol on January 6, 2021, which are summarized in the Court's opinion in United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022). This factual summary is "for background purposes only," and these facts "do not inform the Court's analysis" of the Press Coalition's application. See United States v. Montgomery, 578 F. Supp. 3d 54, 59 n.1 (D.D.C. 2021).

On August 30, 2022, Mr. Puma entered a guilty plea to Count One of the Indictment, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). See Plea Agreement [Dkt. No. 47]. In anticipation of sentencing, the government submitted several video exhibits depicting Mr. Puma's conduct on January 6, 2021. See Notice. The Court held a sentencing hearing and sentenced Mr. Puma on March 21, 2023.

On February 9, 2023, the Press Coalition filed the present application requesting access to these video exhibits. See App. The Press Coalition relies on the memorandum opinion and standing order issued by then-Chief Judge Beryl Howell in In re: Press and Public Access to Video Exhibits in the Capitol Riot Cases ("In re Public Access in Capitol Cases"), Misc. Action No. 21-0046, 2021 WL 1946378 (D.D.C. May 14, 2021). Chief Judge Howell issued Standing Order 21-46 after several media organizations sought implementation of "'a uniform method of prompt access to all judicial records,' including video evidence, in cases arising from the violent breach of the United States Capitol on January 6, 2021." Id. at *1. After soliciting briefing from the United States Attorney and the Federal Public Defender, Chief Judge Howell declined to institute a blanket policy allowing press unfettered access to video exhibits, instead opting for a case-by-case analysis of press requests to be conducted by the presiding judge in each case. Id. at *4-5, *7.

The Standing Order provides several methods by which members of the press can access "pretrial proceedings in Capitol Cases, and video exhibits used therein that are not under seal." Standing Order 21-28 at 4. Members of the media can tune into proceedings via phone; request access to live-stream video of certain proceedings; attend proceedings in-person; and access video exhibits upon application to the court. Id. at 4-5. If a court orders that the press be given access to certain video exhibits, the U.S. Attorney's Office will make those videos available through a digital drop box. Id. at 5. The Standing Order expressly provides that "[n]o recording, copying, downloading, retransmitting or further broadcasting of video exhibits in a particular case is permitted, unless such permission is granted by the presiding judge." Id.

In this case, the Press Coalition requested that the government make available its video exhibits via electronic drop box, consistent with the Standing Order. App. at 3. The Press Coalition also requested that the Court grant its affiliate media organizations permission to record, copy, download, retransmit, and otherwise publish the videos. Id. The United States has indicated that "these exhibits should be promptly released to the public." Notice at 2. Mr. Puma opposed the Press Coalition's request, arguing that disclosure of these videos would negatively affect Mr. Puma's "livelihood, and ability to be gainfully employed." See Def. Opp. at 2.

## II. LEGAL STANDARD

Federal courts have routinely recognized "a general right to inspect and copy public records and documents," although this right is "not absolute." Nixon v. Warner Comms., Inc., 435 U.S. 589, 597-98 (1978). There is generally a presumption "in favor of public access to judicial records." Id. at 602; see United States v. Hubbard, 650 F.2d 293, 317 (D.C. Cir. 1980) (recognizing the "strong presumption in favor of public access to judicial proceedings"). This presumption applies to "judicial records," which are materials submitted "intended to influence

the court." In re Matter of the Application of Jason Leopold to Unseal Certain Electronic

Surveillance Applications and Orders ("In re Leopold"), 964 F.3d 1121, 1128 (D.C. Cir. 2020).

Although it is strong, the presumption of access to judicial records is not irrebuttable.  See

United States v. Hubbard, 650 F.2d at 315-316.  Competing public and private interests may

outweigh the presumption in favor of disclosure.  See id.; MetLife v. Fin. Stability Oversight

Council, 865 F.3d 661, 665-66 (D.C. Cir. 2017).  The decision about whether and how to provide

third parties with access to judicial records is "best left to the sound discretion of the trial court, a

discretion to be exercised in light of the relevant facts and circumstances of the particular case."

Nixon v. Warner Comms., Inc., 435 U.S. at 599; see United States v. Hubbard, 650 F.2d

at 316-17; see generally In re Public Access in Capitol Cases, 2021 WL 1946378.

The D.C. Circuit's decision in United States v. Hubbard guides the Court's

assessment of whether to permit public access to judicial records.  See MetLife v. Fin. Stability

Oversight Council, 865 F.3d at 666; In re Leopold, 964 F.3d at 1127; In re Public Access in

Capitol Cases, 2021 WL 1946378 at *4.  After determining that a sought-after document is in

fact a judicial record, courts must assess the following factors:

> (1) the need for public access to the documents at issue;
> (2) the extent of previous public access to the documents;
> (3) the fact that someone has objected to disclosure, and the identity
>     of that person;
> (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and
> (6) the purposes for which the documents were introduced during
>     the judicial proceedings.

See United States v. Hubbard, 650 F.2d at 317-22; Metlife v. Fin. Stability

Oversight Council, 865 F.3d at 665; In re Leopold, 964 F.3d at 1131; In re Public Access in

Capitol Cases, 2021 WL 1946378 at *4.  Under Hubbard, as the D.C. Circuit has explained, "a

seal may be maintained only if the district court, after considering the relevant facts and

circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." In re Leopold, 964 F.3d at 1131 (internal quotations omitted).

The Court's inquiry into whether a document should be disclosed thus requires examining: (1) whether a sought-after document is a "judicial record" intended to influence the court's decision, such that the presumption of public access applies; (2) whether common law applies or whether Congress "has spoken directly to the issue at hand," thus displacing common law rules of public access; and (3) if the common law applies, whether the Hubbard factors counsel in favor of disclosure. See In re Leopold, 964 F.3d at 1129; MetLife v. Fin. Stability Oversight Council, 865 F.3d at 663.

### III. DISCUSSION

The parties do not dispute whether the videos are "judicial records," nor do they contend that the common law has been displaced by an act of Congress in this case. See Def. Opp. at 2-3; Reply at 1. The Court agrees that the video exhibits are judicial records and finds that the common law applies. Accordingly, the only analysis required of the Court is an assessment of the six Hubbard factors.

#### A. Factor (1): The Need for Public Access to the Documents at Issue

The Press Coalition argues that any and all videos from the January 6, 2021 insurrection show "'th[e] effort to disrupt the democratic process in counting electoral votes,' which remains 'of deep national importance and public interest." Reply at 2 (quoting United States v. Jackson, Criminal No. 21-mj-0115, 2021 WL 1026127, at *6 (D.D.C. Mar. 17, 2021)). Accordingly, the Press Coalition maintains, there is a "strong public interest in seeing real-time

images of what happened that day." In re Application for Access to Certain Video Exhibits ("In re Klein"), 546 F. Supp. 3d 1, 7 (D.D.C. 2021); Reply at 2; see United States v. Torrens, 560 F. Supp. 3d 283, 293 (D.D.C. 2021) ("The public has an interest in understanding the conduct underlying the charges in these cases, as well as the government's prosecutorial decision-making.").

Mr. Puma does not dispute that the events of January 6 are a matter of national importance. Rather, he argues that "there is nothing in particular about his case that is any different than the average January 6 case that warrants a particular 'need' for these video exhibits." Def. Opp. at 4. As in Hubbard, the public already has access to many of the documents relevant to his case – including docket entries, opinions by the Court, and sentencing memoranda – which suggests that the public need for these specific videos is not particularly strong. Id. at 5; see Hubbard v. United States, 650 F.2d at 318. In addition to the lack of any particular public interest in his case, Mr. Puma also argues that the press has had "almost unfettered access to all video exhibits filed in January 6 cases for almost two years now." Def. Opp. at 4. Courts have already disclosed a significant amount of January 6-related video to the press, despite the Court's ordinary practice of prohibiting members of the public from recording judicial proceedings. Id.

Despite Mr. Puma's arguments, this first Hubbard factor weighs in favor of disclosure – but only slightly. See United States v. Hubbard, 650 F.2d at 317-18 (the "purposes of public access are only modestly served" where public had access to related proceedings). The Press Coalition is correct that the events of January 6, 2021 remain matters of "deep national importance," see United States v. Jackson, 2021 WL 1026127, at *6, and thus there is a "generalized" public interest in learning more about that day. United States v. Hubbard, 650

6

F.2d at 317. Aside from citing the general public interest in the January 6 insurrection, however, the Press Coalition has not explained how disclosure of these specific materials would promote a particular public purpose. App. at 2; Reply at 2. Still, although the Press Coalition cites only this general interest in these videos – and the public has already been given access to a substantial amount of January 6-related material – the Court nevertheless concludes that this factor slightly weighs in favor of disclosure. In re Application for Access to Video Exhibits ("In re Fitzsimons"), 575 F. Supp. 3d 101, 108 (D.D.C. 2021) (to be subject to disclosure, judicial records need not depict events "more newsworthy" than records which are already publicly accessible); see Nixon v. Warmer Comms. Inc., 435 U.S. at 602 ("On respondents' side of the scales is the incremental gain in public understanding of an immensely important historical occurrence . . . not inconsequential despite the already widespread dissemination of printed transcripts.").

### B. Factor (2): Extent of Previous Public Access to These Documents

The second Hubbard factor requires assessing whether the records at issue have previously been made available to the public. "Previous access is a factor which may weigh in favor of subsequent access." United States v. Hubbard, 650 F.2d at 318. The video exhibits at issue here include Mr. Puma's GoPro footage, his selfie-style videos, and Capitol surveillance footage. See Notice. The extent of prior public access to these videos varies, with some videos having already been shared to social media and others having only been described or excerpted as screenshots – still photos taken from live videos – in the parties' sentencing memoranda. See Reply at 2; Gov't Sent'g Mem. at 4-11.

With regard to the selfie-style videos that Mr. Puma appeared to livestream on Facebook, Mr. Puma argues that it is unclear whether the videos were actually livestreamed, and

the Court cannot ascertain how many people watched or had access to these videos.  Def. Opp. at 5-6.  Nevertheless, the facts set forth in the government's sentencing memorandum make clear that these particular videos were in fact livestreamed.  Gov't Sent'g Mem. at 11-12.  Because these videos were, at some point and to some degree, "readily accessible on the internet," this factor weighs in favor of disclosure as to the selfie videos.  United States v. Jackson, 2021 WL 1026127 at *6.

The other video exhibits – Mr. Puma's GoPro footage and the Capitol surveillance footage – were not streamed live on Facebook or previously made public.  But the Press Coalition argues that this Hubbard factor weighs in favor of disclosure as to these exhibits as well, because the government's sentencing memorandum contains screenshots derived from the GoPro and surveillance footage.  Reply at 2.  The Press Coalition cites Judge Howell's opinion in United States v. Jackson in support.  Id.  In Jackson, a news organization requested access to a video, screenshots of which had been featured in the publicly available criminal complaint in a January 6 case.  United States v. Jackson, 2021 WL 1026127 at *6.  Because screenshots "depict[ing] the defendant's most egregious conduct" had already been made publicly available, Judge Howell concluded that this Hubbard factor weighed in favor of disclosure of the entire original video.  Id.

The Court does not believe this same conclusion can be fairly drawn in Mr. Puma's case.  The exhibits at issue here – GoPro footage and Capitol surveillance footage – are comprised of about an hour of video footage total, while the government's sentencing memorandum contains only about a dozen screenshots from these videos.  See Gov't Sent'g Mem. at 4-11.  Although the screenshots were derived from the videos, the videos themselves contain a much fuller and more vivid representation of what Mr. Puma experienced that day – a

picture which cannot be conveyed in still images alone.  See Def. Opp. at 6 (noting that the full-length videos "provide the full context for the Court").  While there has been some degree of public access to portions of these videos given the public disclosure of a few screenshots, it is not accurate to say that there has been prior public access to these videos in their entirety.  The majority of these videos has not been disclosed.  Compare In re Fitzsimons, 575 F. Supp. 3d at 110 (finding that prior public access weighed in favor of release where video footage itself was "extensively discussed or publicly shown during the in person September pretrial hearing"); United States v. Gieswein, Criminal No. 21-0024, Minute Order (D.D.C. Aug. 9, 2021) (denying disclosure of videos not submitted to the court even though the parties' publicly available briefs contained screenshots taken from these videos).  Accordingly, this factor weighs in favor of disclosure as to the videos that were previously posted to Facebook but against disclosure as far as the GoPro and surveillance exhibits are concerned.

### C.  Factor (3): Objection to Disclosure and Identities of Objectors

Mr. Puma has objected to the disclosure of all of the videos requested in the Press Coalition's application, and the fact that he objects weighs against disclosure.  See Def. Opp. The Press Coalition argues that because Mr. Puma is the only person to object, this factor should not weigh against disclosure.  See Reply at 2-3.  Some courts have concluded, particularly in the context of the January 6 cases, that when a criminal defendant is the only party objecting, this factor does not weigh strongly against disclosure.  See In re Klein, 546 F. Supp. 3d at 7 (that "the only objecting party here is Klein" is a fact that "favors disclosure"); United States v. Jackson, 2021 WL 1026127 at *6 (that "[t]he only party to object here is the defendant, not any third party, favors disclosure").  Courts that tend to discount a defendant's objection reason that "[t]his [Hubbard] factor focuses on the privacy interests of third parties."  In re Fitzsimons, 575

9

F. Supp. 3d at 110; see id. at 111 (where there are "no third-party property or privacy rights at issue, there is no 'broader protection' from disclosure triggered under this factor").

The Court in Hubbard, however, explicitly noted that "an obvious but important consideration" is that "[s]trong objections were raised to the unsealing order both by the individual defendants" and by a third party. United States v. Hubbard, 650 F.2d at 319. Although the court in Hubbard expressed particular concern with third-party objections, its holding was not limited to cases where only third-party interests are implicated. Id. Outside of the January 6 context, courts have not universally discounted a defendant's objections. See Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d 130, 133 (D.D.C. 2009) ("Defendants are the only parties who object to the unsealing . . . . [T]he fact that a party objects may be a significant factor for the court to consider."). Mr. Puma's objection weighs against disclosure.

### D. Factor (4): Strength of Property and Privacy Interests Asserted

"[D]isclosure is discouraged where there is a possibility of 'public humiliation and degradation' that would 'constitute an unconscionable invasion of privacy.'" United States v. Jackson, 2021 WL 1026127 at *7 (quoting In re Nat'l Broad. Co., Inc., 653 F.2d 609, 620 (D.C. Cir. 1981)). Mr. Puma argues that the disputed videos contain his statements, "some of which were made in private and in a private setting," and which are not related to the charged offenses. Def. Mem. at 6. He further argues that releasing these videos would potentially subject him to scrutiny and humiliation. Id. at 7.

The public nature of the conduct depicted in these videos, however, outweighs Mr. Puma's objections. See United States v. Hubbard, 650 F.2d at 320 (noting a generalized privacy interest where records were seized from a "non-public area"); Reply at 3. Multiple courts have come to this conclusion in the context of the January 6 insurrection. See, e.g., In re

Fitzsimons, 575 F. Supp. 3d at 111 (finding that this factor weighed in favor of disclosure because videos depicted Mr. Fitzsimons's public participation in the January 6 riot and interviews he gave later on); In re Klein, 546 F. Supp. 3d at 7-8 ("Klein does not assert any privacy interest in the videos, nor could he 'since the images of [him] were captured while he was participating very publicly' in the January 6 events.") (quoting United States v. Jackson, 2021 WL 1026127 at *7); United States v. Jackson, 2021 WL 1026127 at *6-7 (defendant could not suggest he had a privacy interest in videos "since the images of defendant were captured while he was participating very publicly with a mob assaulting the Capitol"); United States v. Rukstales, Criminal No. 21-0041, Order (D.D.C. Nov. 24, 2021) [Dkt. No. 150] at 2 (granting access to videos submitted for sentencing because Mr. Rukstales "does not have a property or privacy interest in videos of his conduct inside the Capitol").

### E. Factor (5): Possibility of Prejudice

Mr. Puma explains that disclosure of these videos threatens to "[place] his livelihood at risk and his ability to support his family at risk." Def. Opp. at 6-7. Mr. Puma does not argue that he will suffer legal prejudice – he had already pleaded guilty when he raised his objection, and releasing these videos does not risk tainting the pool of potential jurors or influencing any potential witnesses. Rather, he argues that he will be personally negatively affected by the potential redistribution of these videos by national news organizations. Id. Mr. Puma's primary concern is losing his job, as he reports that has already lost two jobs due to media coverage of his charges. Def. Mem. at 6-7. Compare United States v. Torrens, 560 F. Supp. 3d at 293 (concerns about releasing surveillance footage were "speculative and attenuated" and "too general" to weigh against disclosure); In re Klein, 546 F. Supp. 3d at 8 (objecting party did not specify the prejudice that disclosure would create). Mr. Puma frames this concern as a

potential prejudice, though the Court notes that it is closely related to the property and privacy interests considered above.  See United States v. Torrens, 560 F. Supp. 3d at 293 (considering the fourth and fifth Hubbard factors together); United States v. Jackson, 2021 WL 1026127 at *7 (same).

The Press Coalition argues, and some courts have agreed, that the personal prejudice Mr. Puma describes is not the kind of prejudice contemplated by Hubbard.  See United States v. Rukstales, Criminal No. 21-0041 [Dkt. No. 150] at 2-3 ("While public dissemination of the videos may cause Rukstales additional public embarrassment, that is not the legal prejudice with which the Hubbard test is concerned."); In re Fitzsimons, 575 F. Supp. 3d at 112-13 (primary concerns with disclosure relate to tainting a jury pool and precluding the possibility of a fair trial); see, e.g., Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d at 135 ("Although the Defendants might be embarrassed by the public disclosure of formerly confidential communications, they have not identified any legal prejudice they would suffer."); United States ex rel. Grover v. Related Cos., LP, 4 F. Supp. 3d 21, 26-27 (D.D.C. 2013) (concluding that "[h]arm to reputation and career" is not a compelling reason for non-disclosure).

Although the Court in Hubbard certainly discussed "the danger of an unfair trial by adverse publicity," it did not purport to limit the kind of prejudice to be considered.  United States v. Hubbard, 650 F.2d at 316; see id. at 324 ("The kinds of interests cited by the defendants below do not, we think, exhaust the types of particularized privacy interests that might be asserted.").  Moreover, in In re National Broadcasting Co., the D.C. Circuit expressed concern with "public humiliation and degradation" that may result from the disclosure of judicial records, and explained that a court may deny access where "justice so requires."  In re Nat'l Broad. Co., Inc., 653 F.2d at 613, 620.  Accordingly, the Court may consider the kind of non-legal potential

prejudice that Mr. Puma describes.  Def. Mem. at 6-8.  This kind of practical and personal prejudice, however, may not weigh as strongly against disclosure as the legal prejudice discussed in Hubbard would.

Mr. Puma's case is distinct from other January 6 media requests, as there was minimal press coverage of Mr. Puma prior to his sentencing in March.  See Def. Mem. at 4 n.3 (only two local papers had covered Mr. Puma).  Other courts have authorized the release of judicial records where criminal defendants were already subject to "high publicity [which] diminishes the concern of additional prejudice."  In re Fitzsimons, 575 F. Supp. 3d at 113.  See In re Klein, 546 F. Supp. 3d at 8 ("Given the scope of prior public access, then, releasing the hearing clips would not prejudice Klein."); United States v. Jackson, 2021 WL 1026127 at *8 ("Further disclosures of his actual offense conduct" where two videos were already publicly available "may focus more attention on that conduct and possibly exacerbate prejudice, but not to an extent that overcomes the presumption of public access").  As discussed earlier, there has been no previous public or media exposure to Mr. Puma's GoPro videos and an indeterminate amount of public access to his selfie videos.  See supra Subsection III.A (discussing prior public access, the first Hubbard factor).  The lack of significant prior media exposure indicates that the potential for prejudice here may be more substantial than in other cases.

Whether the fifth Hubbard factor weighs for or against disclosure is a close question.  The practical, non-legal prejudice asserted, coupled with the lack of prior media exposure, might weigh strongly against publication of judicial records in some circumstances.  Here, however, Mr. Puma's argument – that the media coverage potentially generated from releasing these videos could "cause public and financial ruin" – loses force in light of the fact that a sentence of incarceration has been imposed.  Def. Opp. at 7.  On March 21, 2023, the

13

Court sentenced Mr. Puma to nine months of imprisonment, followed by two years of supervised release. Mr. Puma's employer will almost certainly learn of the details of this case when Mr. Puma self-surrenders and is absent from work for a substantial period of time. The Court understands Mr. Puma's concerns, but given the circumstances of his sentence, this factor now weighs only very slightly against disclosure, if at all.

### F. Factor (6): Purpose of Introducing the Records in Judicial Proceedings

Mr. Puma argues that only small portions of the videos at issue depict his criminal conduct, and thus the full-length GoPro videos are not "relevant to the overall allegations or the Court's consideration at sentencing." Def. Opp. at 6. It is true that "the presumption of access to documents that do not serve as the basis for a substantive determination . . . is appreciably weaker." United States v. Graham, 257 F.3d 143, 151 (2d Cir. 2001). But these videos are persuasive, as the government intended for them to be, on the facts relative to sentencing. The videos depict Mr. Puma's behavior, as well as the larger context of the Capitol insurrection, and were considered by the Court in making its sentencing determination. The government showed clips from several of these videos at the sentencing hearing, and the Court reviewed all of the videos – the full length GoPro footage, as well as the Capitol surveillance video and selfie videos – prior to sentencing. This factor weighs in favor of disclosure. In re Fitzsimons, 575 F. Supp. 3d at 114 (noting that "this factor weighs in favor of public release because the Government introduced the exhibits to influence the Court's decision to detain Defendant"); United States v. Jackson, 2021 WL 1026127 at *8 ("As the Video Exhibits were introduced for the Court's consideration on the matter of detaining defendant, the final factor weighs heavily in favor of disclosure.").

IV.  CONCLUSION

The Press Coalition has demonstrated that the videos it requests depict matters of "deep national importance and public interest both as to the offense conduct and individuals involved," United States v. Jackson, 2021 WL 1026127 at *6, and that there has been some degree of previous public access to these records.  Reply at 2.  Each of the videos submitted was supposed to be, and in fact was, relied on by the Court in making its sentencing determination.  After carefully weighing the competing interests, the Court finds that Mr. Puma's showing of prejudice is not sufficient to overcome the "strong presumption in favor of public access" to these kinds of judicial records.  United States v. Hubbard, 650 F.2d at 317.  For the reasons stated in this Opinion, the Press Coalition's motion was granted by Order on March 19, 2023.  See Order [Dkt. No. 64].

SO ORDERED.


PAUL L. FRIEDMAN
United States District Judge

DATE:  3\31\23